UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

RAMY KAMAL ELSHOURBAGY,

Petitioner,

v.

PAMELA BONDI, Attorney General of the United States, et al.,

Respondents.

CASE NO. 2:25-cv-02432-TL

ORDER ON APPLICATION FOR A WRIT OF HABEAS CORPUS

This matter is before the Court on Petitioner Ramy Kamal Elshourbagy's Application for a Writ of Habeas Corpus ("habeas petition"). Dkt. No. 1. Petitioner, who has been detained at the Northwest ICE Processing Center ("NWIPC") for over six months since his order of removal became final, asserts that his continued detention is unconstitutional and seeks immediate release. *Id*. Petitioner also seeks relief regarding potential removal to a third country. *Id.* Respondents are Pamela Bondi, United States Attorney General; Kristi Noem, Secretary, U.S. Department of Homeland Security ("DHS"); Laura Hermosillo, Acting Seattle Field Officer Director, United States Citizenship and Immigration Services ("USCIS"); Bruce Scott, Warden

of NWIPC, and United States Immigration and Customs Enforcement ("ICE") (collectively, "Respondents"). Respondents filed a return memorandum asserting that: (1) ICE is lawfully pursuing Petitioner's removal to third countries; (2) these efforts and ICE's third-country removal policy are not unconstitutional; (3) Petitioner has no standing to challenge efforts to remove him; and (4) any claims Petitioner might assert should be adjudicated via a nationwide class action pending in the District of Massachusetts. Dkt. No. 8. Having considered Petitioner's petition, Respondents' return, Petitioner's traverse (Dkt. No. 13), and the relevant record, the Court GRANTS in part and DENIES in part Petitioner's petition.

## I. BACKGROUND

Petitioner is a citizen of Egypt who entered the United States without inspection on or about October 20, 2025. Dkt. No. 9-1 (Form I-213) at 3–4. Petitioner was apprehended, detained, and initially placed into expedited removal proceedings. *Id.* at 4. On or around January 14, 2025, U.S. Citizenship and Immigration Services ("USCIS") served Petitioner with a notice to appear, initiating regular removal proceedings against him. *See* Dkt. No. 9-4 (Notice to Appear). Within these proceedings, Petitioner sought asylum, withholding of removal under § 241(b)(3) of the Immigration and Nationality Act ("INA"), and withholding of removal under the Convention Against Torture ("CAT"). Dkt. No. 1-1 (Order of Immigration Judge) at 2.

On May 6, 2025, an Immigration Judge issued a final order in Petitioner's immigration proceedings. *See* Dkt. No. 1-1. The Immigration Judge found Petitioner inadmissible under INA Section 212(a)(6)(A)(i), denied his applications for asylum and withholding of removal under the INA, and ordered him removed to Egypt. *Id.* at 2, 4. However, the Immigration Judge granted Petitioner's application for withholding of removal under CAT. *Id.* at 2. In other words, the Judge found that Petitioner cannot legally be removed to Egypt because, if he were, it is more likely than not that Petitioner would be tortured.

Both Parties waived appeal, and the Immigration Judge's order became final on May 6, 2025. Dkt. No. 1-1 at 5. Petitioner has been held at the NWIPC since that time, ostensibly to effect his removal to a country other than Egypt (a so-called "third country"). Petitioner has no citizenship or significant ties to any other country. No travel documents have been obtained for any third country, and Respondents have not identified any third country willing to accept him. At various times, officers from ICE's Office of Enforcement and Removal Operations ("ERO") have expressed an intent to remove Petitioner to Uganda (Dkt. No. 9-7 at 2 ("Removal Notice")) or to Mauritania (Dkt. No. 10 (Arambula Decl.) ¶ 16).

## II. Legal Standard

"Writs of habeas corpus may be granted by . . . the district courts . . . within their respective jurisdictions." 28 U.S.C. § 2241(a). Habeas petitioners must prove by the preponderance of the evidence that they are "in custody in violation of the Constitution or laws or treaties of the United States." *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004); 28 U.S.C. § 2241(c).

The federal courts have "long recognized the existence of an implied cause of action through which plaintiffs may seek equitable relief to remedy a constitutional violation." *Roman v. Wolf*, 977 F.3d 935, 941 (9th Cir. 2020). A plaintiff seeking a permanent injunction must demonstrate (1) that they have suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). "Once a [constitutional] right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is

broad, for breadth and flexibility are inherent in equitable remedies." *Roman*, 977 F.3d at 942 (quoting *Swann v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 1, 15 (1971)).

## III. Discussion

The Court begins with a caution from the Supreme Court in *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) : "The proceedings at issue here are civil, not criminal, and we assume that they are nonpunitive in purpose and effect. . . . [W]here detention's goal is no longer practically attainable, detention no longer bears a reasonable relation to the purpose for which the individual was committed." (Citation modified).

Petitioner seeks two major categories of relief: first, immediate release from detention under *Zadvydas*, 533 U.S. 678, and second, relief related to potential third-country removal—that is, removal to any country other than Egypt.

### A. Continued Detention

#### 1. Legal Framework for Detention under 8 U.S.C. § 1231

Petitioner is detained under 8 U.S.C. § 1231, a provision of the INA. Under Section 1231(a)(1), "when [a noncitizen] is ordered removed, the Attorney General shall remove the [noncitizen] from the United States within a period of 90 days (in this section referred to as the 'removal period')." 8 U.S.C. § 1231(a)(1). Section 1231(a)(2) mandates the detention of the noncitizen during the removal period. *Id.* § 1231(a)(2). Finally, Section 1236(a)(6) authorizes the continued detention of noncitizens after the expiration of the removal period:

> [A noncitizen] ordered removed who is inadmissible under section 1182, removable under section 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4) of this title or who has been determined by the [the Secretary of Homeland Security] to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3).

*Id.* § 1231(a)(6).

Although there is no temporal limit on the length of detention in the statute, the Supreme Court in *Zadvydas*, 533 U.S. at 698, observed that "Congress enacted the present law, which liberalizes pre-existing law by shortening the removal period from six months to 90 days, mandat[ing] detention of certain criminal [noncitizens] during the removal proceedings and for the subsequent 90-day removal period . . . ." The Supreme Court reasoned that

> [w]hile an argument can be made for confining any presumption to 90 days, we doubt that when Congress shortened the removal period to 90 days in 1996 it believed that all reasonably foreseeable removals could be accomplished in that time. We do have reason to believe, however, that Congress previously doubted the constitutionality of detention for more than six months.

*Id.* at 701 (citing Juris. Statement in *United States v. Witkovich,* O.T. 1956, No. 295, at 8–9.)

The Supreme Court went on to hold that the INA does not authorize "indefinite, perhaps permanent, detention" of noncitizens subject to final orders of removal under Section 1231(a)(6), *id.* at 699, instead construing the statute to contain an "implicit 'reasonable time' limitation," *id.* at 682. "[F]or the sake of uniform administration in the federal courts," the Supreme Court recognized six months as that time limitation. *Id.* at 701. It further found that if a statute were to permit indefinite detention of a noncitizen, that would "raise a serious constitutional problem" under the Fifth Amendment's Due Process Clause. *Id.* at 690. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Id*.

Ultimately, the Supreme Court determined that it is "presumptively reasonable" for DHS to detain a noncitizen for six months following entry of a final removal order while it works to remove the individual from the United States. *Id.* at 701. The six-month presumption "does not mean that every [noncitizen] not removed must be released after six months. To the contrary, [a noncitizen] may be held in confinement until it has been determined that there is no significant

likelihood of removal in the reasonably foreseeable future." *Id*. at 701. Nevertheless, "for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Id.* Therefore, "[a]fter this 6-month period, once the [noncitizen] provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* If the Government fails to rebut the noncitizen's showing, the noncitizen is entitled to habeas relief. *Id.*

Petitioner argues that his detention exceeds the presumptively reasonable period under *Zadvydas*, that there is no likelihood of removal in the reasonably foreseeable future, and that his continued detention is therefore unconstitutional. *See* Dkt. No. 1 at 15. Respondents—whose arguments all relate to third-country removal rather than detention (*see* Dkt. No. 8 at 10–14)—offer no response. Respondents acknowledge that six months is the presumptively reasonable period for removal under *Zadvydas* (Dkt. No. 8 at 3) and concede that this period has lapsed (*see id.* at 10 ("Petitioner has been detained in ICE custody post-final order of removal for a total of 225 days.")). Then Respondents ignore entirely the burden-shifting framework established by *Zadvydas*, do not engage with any of Petitioner's arguments that *Zadvydas* requires his release, and do not offer any reason why *Zadvydas* should not control. Applying the controlling precedent, as the Court must, it is clear that: (1) Petitioner's detention is beyond what is presumptively reasonable; (2) Petitioner has shown "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future" (and Respondents do not rebut these facts); and (3) Respondents present no evidence that there is a significant likelihood of removal in the reasonably foreseeable future. Accordingly, the Court GRANTS Petitioner's request for his immediate release.

**2. The Length of Detention Exceeds What Is Presumptively Reasonable**

The first inquiry under *Zadvydas* is the length of a noncitizen's detention after their removal order becomes final. Where that period exceeds six months, the Court will not presume that detention is reasonable or that it serves the purpose of effecting removal.

Since his removal order became final on May 6, 2025, Petitioner had been detained a total of 225 days, or over seven months, as of the date of the filing of Respondents' response. Therefore, his detention is not presumptively reasonable.

**3. Petitioner Has Met His Burden Under *Zadvydas***

Here, Petitioner "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," *Zadvydas*, 533 U.S. at 701, because he cannot be removed to Egypt, he does not have citizenship or significant ties to any other county, and there is no evidence that any other country is willing to accept Petitioner's third country removal under 8 U.S.C. § 1231(b)(2)(E). Courts routinely find that noncitizens under such circumstances have met their initial burden under *Zadvydas*. *See, e.g.*, *Shadalo v. Mattos*, No. C25-2076, 2025 WL 3568234, at *6 (D. Nev. Dec. 14, 2025); *Vishal v. Chestnut*, No. C25-1469, 2025 WL 3511815, at *3 (E.D. Cal. Dec. 8, 2025); *Gomez v. Mattos*, No. C25-975, 2025 WL 3101994, at *5 (D. Nev. Nov. 6, 2025); *Hmung v. Bondi*, No. C-25-1303, 2025 WL 3657221, at *3 (W.D. Okla. Dec. 9, 2025), *report and recommendation adopted,* 2025 WL 3670499 (Dec. 17, 2025); *Sukhyani v. Bondi et al.*, Case No. C-25-1243 (W.D. Okla. Nov. 18, 2025), *report and recommendation adopted*, 2025 WL 3283274 (Nov. 25, 2025); *Trejo v. Warden of ERO El Paso East Mont.*, No. C25-401, 2025 WL 2992187, at *5 (W.D. Tex. Oct. 24, 2025); *Misirbekov v. Venegas*, No. C25-168, 2025 WL 2450991, *1 (S.D. Tex. Aug. 15, 2025); *see also Nadarajah v. Gonzales*, 443 F.3d 1069, 1081 (9th Cir. 2006) (recognizing that a grant of withholding of

removal under the Convention Against Torture to a noncitizen "is a powerful indication of the improbability of his foreseeable removal, by any objective measure").

Based on these supports for Petitioner's claim, the Court finds that Petitioner has met his burden to show "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701.

**4. Respondents Have Not Met Their Burden Under *Zadvydas***

Respondents do not argue that there is a significant likelihood that Petitioner can be removed in the foreseeable future. They do not contest that Petitioner cannot be removed to Egypt, nor do they identify any other country to which there is any evidence that Petitioner might *ever* be removed. While Respondents provide thin assertions of "intent" to remove Petitioner to Uganda or Mauritania (*see* Dkt. No. 8 at 9–10), they present no evidence at all that removal to either of these countries is possible, much less reasonably foreseeable.

As for Uganda, Respondents assert only that "ICE provided Petitioner notice of their intent to remove him to Uganda" on September 2, 2025, in the final days of the 90-day removal period. Dkt. No. 8 at 11, Dkt No. 10 at 2; Dkt. No. 9-7 at 2. There is no evidence that the Government has taken any steps, before or since that date, to remove Petitioner to Uganda. There is no evidence that steps have been taken to obtain a Ugandan travel document for Petitioner, that Uganda has any interest in accepting Petitioner, or even that there has been any communication with Uganda regarding Petitioner at all. Notably, Uganda is *not* among the countries whose consulates were contacted about receiving Petitioner. *See* Dkt. No. 8 at 9; *see generally* Dkt. No. 9-6.

As for Mauritania, Respondents allege that:

> On December 15, 2025, ERO directed Petitioner to fill out a travel document application to Mauritania, but Petitioner refused to fill

> out the travel document application.[1] On December 16, 2025, ERO Tacoma requested ERO Headquarters assistance in obtaining a travel document for Mauritania. ERO Headquarters replied with further instructions which local ERO intends to follow.

Dkt. No. 8 at 9–10 (internal citations omitted). But Petitioner's habeas petition was filed on December 2, 2025. Respondents cannot overcome the meritorious arguments in Petitioner's pending habeas petition by simply handing Petitioner an application for travel documents and making a "request [to] Headquarters" it could have made months ago. Even assuming *arguendo* that these sudden efforts on the part of the Government are made in good faith, the *Zadvydas* Court specifically rejected the argument that detention is "lawful as long as 'good faith efforts to effectuate . . . deportation continue . . .'" 533 U.S. at 702. The required showing is a "significant likelihood of removal in the reasonably foreseeable future," and there is *no* evidence that Petitioner can or will be removed to Mauritania in the foreseeable future—only that ERO "intends to" take steps towards that end. "The fact that Respondents intend to complete a travel document request for Petitioner does not make it significantly likely he will be removed in the foreseeable future." *Hoac v. Becerra*, No. C25-1740, 2025 WL 1993771, at *4 (E.D. Cal. July 16, 2025). The prospect of removal to Mauritania is especially dubious where Respondents' evidence shows that an ERO officer informed Petitioner of "ERO's intent to attempt removal to Mauritania" on May 7, 2025 (Dkt. No. 10 ¶ 10); that ICE sent an unsuccessful Consular Request to the Mauritanian consulate on or about June 25, 2025 (Dkt. No. 8 at 9; Dkt. No. 9-6 at 17)[2]; and that ICE had apparently abandoned its Mauritania removal plan by September 2, 2025, when Petitioner was informed of ICE's "intent" to remove him to Uganda (Dkt. No. 9-7 at 2).

---

[1] The government does not allege that this refusal, or any other action by Petitioner, has contributed to the delay in effecting Petitioner's removal.

[2] Respondents characterize this request, along with 20 others that have not been denied, as "pending." *See* Dkt. No. 8 at 9. There is no information that would differentiate Mauritania's position as to Petitioner's removal from that of any other country to which a "pending" Consular Request was directed.

For these reasons, Respondents have failed to rebut Petitioner's showing that there is no significant likelihood of his removal in the reasonably foreseeable future.

* * *

Accordingly, the Court finds that Petitioner is entitled to habeas relief under *Zadvydas* and, therefore, Petitioner should be immediately released from custody.

**B. Third-Country Removal**

In addition to his immediate release, Petitioner requests two orders related to his potential removal to a third country: that "Respondents may not remove or seek to remove Petitioner to a third country without notice and meaningful opportunity to respond in compliance with the [INA] and due process in reopened removal proceedings," and "that Respondents may not remove Petitioner to any third country"—at all—"because Respondents' third-country removal program seeks to impose unconstitutional punishment on its subjects, including imprisonment and other forms of harm." Dkt. No. 1 at 17–18. The Court addresses these requests together.

Respondents offer three arguments against Petitioner's requests related to third-country removal: first, that Petitioner does not have standing to seek the relief he requests; second, that Petitioner is a member of a nationwide plaintiff class certified in the District of Massachusetts and should be required to await whatever relief he is granted as a class member rather than pursuing his own claims; and third, that Plaintiff has not shown the third-country removal policy is punitive or unconstitutional. Dkt. No. 8 at 10–14.

**1. Respondents' Procedural Arguments Fail**

**a. Petitioner Has Standing to Challenge Third-Country Removal**

One "must satisfy the threshold requirement imposed by Article III of the Constitution by alleging an actual case or controversy" to invoke the jurisdiction of the federal courts. *City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983). "To establish Article III standing, an injury must be

concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." *Martin v. City of Boise*, 920 F.3d 584, 608 (9th Cir. 2019) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013)).

To satisfy the injury-in-fact prong of standing in "assert[ing] a claim for prospective injunctive relief, a plaintiff must demonstrate 'that he is realistically threatened by a repetition of the violation.'" *Melendres v. Arpaio*, 695 F.3d 990, 997 (9th Cir. 2012) (citation modified) (quoting *Lyons*, 461 U.S. at 109). To make the required showing, a plaintiff: (1) "may show that the defendant had, at the time of the injury, a written policy, and that the injury 'stems from' that policy," *id.* (quoting *Armstrong v. Davis*, 275 F.3d 849, 861 (9th Cir. 2011), *abrogated on other grounds by Johnson v. California*, 543 U.S. 499 (2005)); or (2) "may demonstrate that the harm is part of a 'pattern of officially sanctioned behavior, violative of . . . federal rights.'" *Id.* (citation modified) (quoting *Armstrong*, 275 F.3d at 861). "While this test is framed in terms of a past harm already experienced, a plaintiff is not strictly required to have *already suffered* a harm in order to seek prospective injunctive relief." *Esmail v. Noem*, No. 25-8325, 2025 WL 3030589, at *5 n.7 (C.D. Cal. Sept. 26, 2025). "Rather, 'the plaintiff must demonstrate that he has suffered *or* is threatened with a concrete and particularized legal harm, coupled with a sufficient likelihood that he will again be wronged in a similar way.'" *Id.* (citation modified) (quoting *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007)). Where "the harm alleged is directly traceable to a written policy . . . there is an implicit likelihood of its repetition in the immediate future." *Bates*, 511 F.3d at 986 (omission in original) (quoting *Armstrong*, 275 F.3d at 861). Finally, "the claimed threat of injury must be likely to be redressed by the prospective injunctive relief." *Id.*

Respondents argue that Petitioner has no standing because he "has suffered no injury at this time and any allegation that he is likely to face an injury in the future is speculative," and

because "the relief Petitioner requests regarding third country removal is already addressed by DHS policy." Dkt. No. 8 at 11.

These arguments are meritless. Here, standing is obvious, because Respondents explicitly concede that "ICE is . . . pursuing Petitioner's removal to third countries." Dkt. No. 8 at 10. Additionally, as Petitioner observes in his traverse, Respondents' own account of the process Petitioner has already received— "including as reflected in Respondents' claim that the Mr. Elshourbagy has not *independently* raised fear in response to a notice of removal to Uganda"— shows that Petitioner "has already suffered injury in fact on this claim for standing purposes." *See* Dkt. No. 13 at 7 (citing Dkt. No. 8 at 9). "Moreover, 'the fact that this injury is directly traceable to a written policy suggests that there is an implicit likelihood of its repetition in the immediate future.'" *Nguyen v. Bondi*, No. C25-2024, 2025 WL 3534168, at *7 (W.D. Wash. Dec. 10, 2025) (citation modified) (quoting *Esmail*, 2025 WL 3030589, at *5). In other words, the existence of DHS's policy, which Petitioner points to as evidence of constitutionally deficient process (Dkt. No. 1 at 13–14), is part of the reason Petitioner *does* have standing, not a valid argument that he does not.

In addition, this Court recently found a noncitizen seeking habeas under *Zadvydas* had standing to challenge potential third-country removal even though respondents in that case presented an ICE officer's sworn declaration that "at this time, . . . ICE is not seeking to remove Petitioner to [a third] country." *Nguyen v. Bondi*, 2025 WL 3534168, at *7 (citation modified). The Court reasoned that the officer's language "clearly indicates that the decision could be changed at any moment," in which case "irreparable harm could easily occur before Petitioner's counsel could seek relief or obtain a ruling from the Court." *Id.* (citation modified). Relying on *Boardman v. Pacific Seafood Group*, 822 F.3d 1011, 1023 (9th Cir. 2016), and in light of DHS's history of executing "sudden" and constitutionally suspect third-country removals, the Court

found that such voluntary assurances were insufficient to deprive the petitioner of standing. *Nguyen v. Bondi*, 2025 WL 3534168, at *7; *see also Hambarsonpour v. Bondi*, No. C25-1802, 2025 WL 3251155, at *5 (W.D. Wash. Nov. 21, 2025) (finding same despite assurances that "ICE is not planning a third country removal," relying on evidence of punitive implementation of third-country removal program and warning that "by the time [issues] are ripe by the government's argument, it will be too late for the individuals to meaningfully challenge the removal." (citation modified)); *Nguyen v. Scott*, 796 F. Supp. 3d 703, 738 (W.D. Wash. 2025). And here, again, Respondents are unequivocal that "ICE is . . . pursuing Petitioner's removal to third countries." Dkt. No. 8 at 10.

Therefore, the Court is satisfied that Petitioner has sufficiently demonstrated "that he is realistically threatened by a repetition of the violation" at issue, *Melendres*, 695 F.3d at 997 (quoting *Lyons*, 461 U.S. at 109). Petitioner therefore has standing to seek relief regarding third-country removal, and this issue is ripe for decision.

**b. Respondent's *D.V.D.* Argument Fails**

Respondents contend that Petitioner cannot obtain relief because he is a member of the plaintiff class in *D.V.D. v. Department of Homeland Security,* No. C25-10676 (D. Mass.). In *D.V.D.*, the district court certified a class of noncitizen petitioners and enjoined the Government from removing them to third countries unless specific conditions were met. 778 F. Supp. 3d 355, 392–93 (D. Mass. 2025). It found that the petitioners were likely to show that "[d]efendants have a policy or practice of executing third-country removals without providing notice and a meaningful opportunity to present fear-based claims." Thus, it found the Government's third-country removal policy or practice likely violates procedural due process. *Id*. at 387. The Government appealed the injunction, and the Supreme Court eventually stayed that injunction in an unexplained, emergency-docket order. *D.V.D*., 145 S. Ct. 2153 (2025).

Here, Respondents argue that, under Ninth Circuit precedent, a class member like Petitioner cannot request the same relief in a separate action. Dkt. No. 8 at 12 (citing *Pride v. Correa*, 719 F.3d 1130, 1133 (9th Cir. 2013)). This Court now joins others in this District that have rejected this argument and found that, under these circumstances, Ninth Circuit precedent permits Petitioner to seek individual relief, and Respondents' reliance on *Pride v. Correa* is misplaced. *See, e.g.*, *Arenado-Borges v. Bondi*, No. C25-2193, 2025 WL 3687518, at *5–6 (W.D. Wash. Dec. 19, 2025); *Baltodano v. Bondi*, No. C25-1958, 2025 WL 3484769, at *3 (W.D. Wash. Dec. 4, 2025); *Abubaka v. Bondi*, No. C25-1889, 2025 WL 3204369, at *2 (W.D. Wash. Nov. 17, 2025); *Nguyen v. Scott*, 796 F. Supp. 3d at 729–732.

As in *Arenado-Borges*, *Baltodano*, and *Abubaka*, this Court adopts the *Nguyen* court's detailed and thoughtful analysis of this issue and the *Nguyen* court's findings that (1) "The class certification order in *D.V.D.* does not prevent this Court from adjudicating Petitioner's claims regarding third-country removal," and (2) absent "clear guidance from the Supreme Court," which the emergency docket order in *D.V.D.* does not provide, this Court must follow well-established precedent. *Nguyen v. Scott*, 796 F. Supp. 3d at 729–32.

**2.     Injunctive Relief Regarding Removal Procedures is Warranted**

Petitioner presents the Court with an overview of the legal framework governing the countries to which a noncitizen may be removed, and under what circumstances. Dkt. No. 1 at 8–12. *Only* if it is "impracticable, inadvisable, or impossible" to remove a noncitizen to (a) the country the noncitizen has designated for removal; (b) the country of which the noncitizen is a subject, national, or citizen; (c) the country from which the individual was admitted to the United States, or which contains the port from which they disembarked for the United States or a contiguous territory; or (d) the non-citizen's country of birth (or the country that now contains their birthplace) or immediate previous residence may the government remove the noncitizen to

"another country whose government will accept [them] into that country." *Id.* at 9–10 (citing U.S.C. § 1231(b)(2)(E)). Even then, the government may not remove any person to a country where they will be persecuted or tortured. *Id.* at 10 (citing 8 U.S.C. § 1231(b)(3)(A); 8 C.F.R. §§ 208.16, 1208.16). Where third-country removal is anticipated, due process requires, *inter alia*, "written notice of the country being designated" and "the statutory basis for the designation, i.e., the applicable subsection of § 1231(b)(2)," *Aden v. Nielsen*, 409 F. Supp. 3d 998, 1019 (W.D. Wash. 2019); that the noncitizen be asked whether they fear persecution or harm upon removal to the third country, and their response memorialized in writing, *id.*; and that notice of the country to which the noncitizen will be removed not be provided "last minute," but with sufficient time that the noncitizen have a meaningful opportunity to apply for fear-based protection from removal, *Andriasian v. INS*, 180 F.3d 1033, 1041 (9th Cir. 1999).

If a noncitizen claims fear of removal to a designated third country, courts in this District have repeatedly held that ICE must give the petitioner an opportunity "to pursue [a] claim for withholding of deportation in reopened removal proceedings before an immigration judge." *Abubaka*, 2025 WL 3204369, at *6; *see Arenado-Borges*, 2025 WL 3687518, at *6 (collecting cases). These district court cases are not binding, but Respondents offer no reason the Court should not follow them. The Court finds the reasoning in *Aden* and the other cases cited above persuasive and concludes that constitutionally and statutorily compliant notice requires that, before Petitioner may be removed to a third country, he must be given an opportunity to respond, and—if he has a fear of persecution or torture—reopened removal proceedings before an Immigration Judge.

Against this legal backdrop, Petitioner presents a number of unrebutted facts suggesting that Respondents have not and will not provide him with him with adequate process absent an order from this Court. Prominent among these are facts of ICE's own current written policy. *See*

Dkt. No. 1 at 13; *see also* Dkt. No. 1-3 (July 9, 2025, Memorandum to ICE Employees). Alarmingly, this policy provides that "[i]f the United States has received diplomatic assurances from the country of removal that [noncitizens] removed from the United States will not be persecuted or tortured, and if the Department of State believes those assurances to be credible, the [noncitizen] may be removed *without the need for further procedures*." Dkt. No. 1-3 at 2 (emphasis added); *see also Nguyen v. Scott*, 796 F. Supp. 3d at 736. In those cases where ICE has *not* received diplomatic assurances it deems credible, an officer will serve the noncitizen with a notice of removal, including the intended country of removal. Dkt. No. 1-3 at 2. However, the policy notes that ICE will "will <u>not</u> affirmatively ask whether the [noncitizen] is afraid of being removed to the country of removal." *Id.* ICE will "generally wait at least 24 hours following service of the Notice of Removal before effectuating removal," but in "exigent circumstances," ICE need wait only six hours. *Id.* If the noncitizen "does not affirmatively state a fear of persecution or torture if removed to the country on the notice within 24 hours," they will be removed to the third country. *Id.*

These procedures fall far short of what court in this District and Circuit have held that due process requires. Respondents appear to argue that Petitioner is already provided with sufficient process by the provisions of the ICE memo. *See* Dkt. No. 8 at 11. However, Respondents fail to address the gaps between the process Petitioner seeks (and that courts have held is required) and the process provided by the ICE policy. Moreover, Respondents misrepresent the protections Petitioner will have under the ICE policy by, for instance, asserting that "When ICE seeks Petitioner's removal to a third country, ICE will provide him with a notice of its intent to remove her [*sic*] and notice as to which country." *Id.* (citing Dkt. No. 1-3). In fact, depending on any "diplomatic assurances" offered by the country for which removal is slated, Petitioner may be given no notice or process at all. *See* Dkt. No. 1-3 at 2. Here, moreover,

Respondent's assertion that Petitioner has not *independently* raised fear in response to a notice of removal to Uganda shows that he is already being denied important procedural safeguards. *See Aden*, 409 F. Supp. 3d at 1019 (due process requires that a noncitizen be asked whether they fear persecution or harm upon removal to the third country). As such, the unanswered facts presented by Petitioner—in the form of ICE's own policy—along with the Respondents' representations as to the process Respondents have afforded Petitioner thus far and expect to afford him in the future (*see* Dkt. No. 8 at 9–10) do not inspire confidence that Respondents can be relied upon to afford Petitioner with statutorily and constitutionally sufficient process absent an order from this Court.

A plaintiff or petitioner "seeking a permanent injunction must demonstrate (1) that he has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc.*, 547 U.S. at 391. Petitioner meets this standard. He has shown that he suffered irreparable injuries for which monetary damages are likely unavailable or inadequate to compensate him: His unlawful detention and violation of his due process rights. *See Melendres*, 695 F.3d at 1002 ("It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976))). Petitioner is likely to suffer that injury again if Respondents attempt to remove him to a third country without the protections required by the Due Process clause, and he is likely to suffer even graver injury if a constitutionally deficient removal is effected. *See A.A.R.P. v. Trump*, 605 U.S. 91, 94 (2025) (detainees with pending habeas petitions facing removal under Alien Enemies Act faced "an imminent threat of severe, irreparable harm"). Were Petitioner to be "removed from the United States to the custody of a foreign sovereign . . . the

Government [might] argue[], as it has previously argued, that no U.S. court ha[s] jurisdiction to order relief." *Id.* at 93. That is, the legal remedies by which Petitioner might redress this harm would be substantially diminished, if not extinguished entirely. In light of such serious harm to Petitioner, the balance of equities tips steeply in his favor, because his interest in avoiding the unlawful deprivation of his liberty outweighs the minimal burden on Respondents to provide notice and an opportunity to be heard if they wish to remove him. Finally, "it is always in the public interest to prevent the violation of a party's constitutional rights." *Riley's Am. Heritage Farms v. Elsasser*, 32 F.4th 707, 731 (9th Cir. 2022) (citation modified). Under these circumstances, injunctive relief is appropriate.

Because Petitioner has standing to raise the third-country removal issue at this time and has demonstrated that injunctive relief is warranted, the Court will grant Petitioner's request to "[o]rder that Respondents may not remove or seek to remove Petitioner to a third country without notice and meaningful opportunity to respond in compliance with the statute and due process in reopened removal proceedings."

**3. On This Record, Petitioner Has Not Shown that Respondents' Third-Country Removal Policies Are Punitive Such That They Violate His Fifth and Eighth Amendment Rights**

In addition to the procedural concerns discussed above, Petitioner further alleges that his potential third-country removal pursuant to current ICE policy would violate the Eighth Amendment's prohibition of cruel and unusual punishment, the Fifth Amendment's prohibition of extrajudicial punishment, and the long-established rule, dating to *Wong Wing v. United States*, 163 U.S. 228, 237–38 (1896), that no "infamous punishment" in addition to deportation may be imposed for immigration violations without a proper criminal trial. Dkt. No. 1 at 16.

In support of this argument, Plaintiff asserts that it has been reported that Respondents have "attempted—and completed—an 'end-run' around the protections of the Convention

Against Torture by deporting a group of migrants to Ghana, which sent them on to their countries of citizenship despite fears of persecution." Dkt. No. 1 at 12 (citing Sarah Stillman, *Disappeared to a Foreign Prison*, The New Yorker (Dec. 12, 2025)). Petitioner alleges that the Trump administration has hand-picked countries known for human rights abuses and instability for its deportations, in an attempt to spread fear and deter immigration, and that hundreds of noncitizens have been removed to third countries only to be met with mistreatment and summary, sometimes indefinite, detention. *Id.* at 12–13. While the Court notes that Petitioner does not substantiate these allegations, it notes also that Respondents do not deny them, and that "courts in this district and across the country have recognized that Petitioner is correct: the government is intentionally removing individuals to countries where they will be imprisoned." *Nguyen v. Bondi*, 2025 WL 3534168, at *9 (citing *Nguyen v. Scott*, 796 F. Supp. 3d at 734 (collecting cases)).

In this particular case, faced with the particular pleadings before it, the Court does not have sufficient basis for a finding that Respondent's third-country removal program is unconstitutional as a whole, or that third-country removal would be punitive as applied to Petitioner specifically. Cases in this District in which courts *have* found as much, "which were specific to a particular population and particular destination countries, do not extend to these circumstances." *Arenado-Borges*, 2025 WL 3687518, at *7 (citing *Nguyen*, 796 F. Supp. 3d at 734; *Abubaka*; 2025 WL 3204369, at *8.)

On this record, the Court cannot find that Petitioner's removal to a third country would constitute unconstitutional punishment. The request is DENIED without prejudice.

//

//

//

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Petitioner's petition for writ of habeas corpus (Dkt. No. 1). The Court further ORDERS:

(1) Respondents and all their officers, agents, employees, attorneys, and persons acting on their behalf or in concert with them:

(a) RELEASE Petitioner from detention immediately pursuant to the conditions in his preexisting Order of Supervision.

(b) Are PROHIBITED from removing Petitioner to a third country without notice and a meaningful opportunity to be heard in reopened removal proceedings with a hearing before an immigration judge;

(c) Within 48 hours of his release, PROVIDE the Court with a declaration confirming that Petitioner has been released from custody and informing the Court of the date and time of his release.

(2) Petitioner's request for an order prohibiting third-country removal as unconstitutionally punitive is DENIED without prejudice.

Dated this 23rd day of December, 2025.

Tana Lin
United States District Judge